## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **LILLIAN EASLEY and all others**<br>**similarly situated,** | )<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| **vs.** | )   **Case No.**   **19-740**<br>)<br>) **JURY TRIAL DEMANDED**<br>) |
| **HUMMINGBIRD FUNDS, D/B/A**<br>**BLUE TRUST LOANS; JOSEPH**<br>**WILDCAT, SR.; NICOLE**<br>**CHAPMAN-REYNOLDS; EDMUND**<br>**PETERSON; CHRIS SOULIER;**<br>**PATRICIA MARQUEZ; PHILLIP**<br>**CHAPMAN, JR.; DAROLD LONDO;**<br>**RANDY SOULIER; MELISSA DOUD;**<br>**JESSI PHILLIPS LORENZO; &**<br>**JUANITA HUGULEY A/K/A JUANITA**<br>**GEORGE-HUGULEY,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | ) |

## CLASS ACTION COMPLAINT

Defendants operate an illegal scheme hiding behind the facade of Native American tribes while they openly violate the usury laws of Alabama and other states. Operating solely online and therefore available to anyone in Alabama or the United States with a computer and a bank account, Defendant Hummingbird Funds, d/b/a Blue Trust Loans, made a loan (loan no. 107602917) to Plaintiff Lillian Easley

("Plaintiff" or "Ms. Easley") on March 26, 2019, with the principal amount of six hundred dollars and an annual interest rate of 609.72 per cent.

Ms. Easley files this Class Action Complaint under the Alabama Small Loan Act, Alabama Code § 5-18-1 *et seq.*, on her own behalf and on behalf of a class of all other Alabama residents who obtained loans from the Defendants (the "Alabama Class"). In addition, Ms. Easley files this complaint under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), on her own behalf and on behalf of a class of residents of the United States who obtained loans from the Defendants (the "RICO Class").

## I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this litigation pursuant to 28 U.S.C. § 1331 as Plaintiff's claims arise under the RICO Act, 18 U.S.C. § 1962. The Court also has diversity jurisdiction because Plaintiff and Defendants reside in different states. The Court has supplemental jurisdiction over Plaintiff's state law claims under to 28 U.SC. § 1967.

2.    This Court also has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1), as modified by the Class Action Fairness Act of 2005, because Plaintiff and Defendants are citizens of different states; there are more than 100 members of the Class (as defined herein); the aggregate amount in controversy

exceeds $5 million, exclusive of attorneys' fees, interest, and costs; and Class members reside across the United States.

3.    Venue is proper in this Court under 28 U.S.C. § 1391 because (i) Defendants conduct substantial business in this District and have intentionally availed themselves of the laws and markets of the United States and this District; and/or (ii) many of the acts and transactions giving rise to this action occurred in this District.

## II.    THE PARTIES

4.    The Plaintiff, Ms. Lillian Easley, is an adult resident of Mobile County, Alabama.

5.    Hummingbird Loans d/b/a Blue Trust Loans ("Blue Trust") is an internet lender with a principal place of business at 13394W Trepania Rd, Hayward, Wisconsin 54843. Blue Trust purports to be an entity organized under the laws of the Lac Courte Oreilles Band of Lake Superior Chippewa Indians.

6.    Joseph Wildcat, Sr., is a citizen of Wisconsin employed as president of the Lac Du Flambeau Tribe of Lake Superior Chippewa Indians ("the LDF Tribe"), at 418 Little Pines, Lac du Flambeau Wisconsin 54538. As president of the LDF Tribe, Mr. Wildcat is the chief administrator of all tribal affairs including the LDF Tribe's business ventures such as its Business Development Corporation and internet

lending and loan servicing businesses it owns, controls, or manages. Mr. Wildcat is believed to play a role in the LDF Tribe's use of funds generated by its internet lending and loan servicing businesses and in choosing board members for the LDF Tribe's business development corporation that services high interest loans for lending entities owned by the LDF Tribe and others. Mr. Wildcat is believed to be responsible for authorizing, ratifying, or promoting the LDF Tribe's policy of collecting unlawful debt from citizens of Alabama and the United States.

7.     Nicole Chapman-Reynolds is a citizen of Wisconsin employed as president of the board of directors of the Lac Du Flambeau Business Development Corporation ("LDF BDC"), 14284 Highway 70 W. P.O. Box 155, Lac Du Flambeau, Wisconsin 54538. In this capacity, Ms. Chapman-Reynolds is believed to be the chief policy maker for the LDF BDC, making and directing policies concerning the practices and procedures for internet lending and loan servicing businesses owned, controlled, or managed by the LDF BCD or by the LDF Tribe, including decisions relating to making and collecting loans from citizens of Alabama. Ms. Chapman-Reynolds is believed to be responsible authorizing or ratifying LDF BCD's policy of collecting unlawful debt from citizens of Alabama and the United States.

8.     Edmund Peterson is a citizen of Wisconsin employed as vice president of the board of directors of the LDF BDC. In that capacity Mr. Peterson is believed

to play a role in setting and implementing policies for LDF BDC, including policies for its online lending and loan servicing businesses, decisions relating to making and collecting loans from citizens of Alabama. Mr. Peterson is believed to be responsible authorizing or ratifying LDF BCD's policy of collecting unlawful debt from citizens of Alabama.

9.      Chris Soulier is a citizen of Wisconsin employed as the treasurer on the board of directors of LDF BDC. In that capacity, Mr. Soulier is believed to play a role in setting policies for LDF BDC including policies for its online lending and loan servicing businesses, including decisions relating to making, collecting, and servicing loans from citizens of the Commonwealth of Alabama. Mr. Soulier is believed to be responsible authorizing or ratifying LDF BCD's policy of collecting unlawful debt from citizens of Alabama. As treasurer, Mr. Soulier is further believed to manage, account for, and distribute unlawful debt collected from borrowers in the state of Alabama.

10.     Patricia Marquez is a citizen of Wisconsin employed as secretary on the board of directors of LDF BDC. In that capacity, Ms. Marquez is believed to play a role in setting policies for LDF BDC including policies for its online lending and loan servicing businesses that impact the collection and servicing of loans from citizens of Alabama. Ms. Marquez is believed to be responsible authorizing or

5

ratifying LDF BCD's policy of collecting unlawful debt from citizens of Alabama and the United States.

11.     Phillip Chapman, Jr., is a citizen of Wisconsin employed as a member at large on the board of directors of LDF BDC. In that capacity, Mr. Chapman is believed to play a role in setting policies for LDF BDC including policies for its online lending and loan servicing businesses that impact the collection and servicing of loans from citizens of Alabama and the United States. Mr. Chapman is believed to be responsible authorizing or ratifying LDF BCD's policy of collecting unlawful debt from citizens of Alabama and the United States.

12.     Darold Londo is a citizen of Wisconsin employed as CEO of LDF BDC. In that capacity, Mr. Londo is the most senior manager of LDF BDC responsible for all of its business enterprises, including its online lending and loan servicing businesses that make, collect, or service loans to citizens of Alabama and the United States. Mr. Londo is believed to be responsible authorizing, ratifying, or managing LDF BCD's policy of collecting unlawful debt from citizens of Alabama and the United States.

13.     Randy Soulier is a citizen of Wisconsin employed as chief operating officer of LDF BDC. In that capacity, Mr. Soulier is the most senior officer of LDF BDC responsible for operation of its business enterprises, including its online

lending and loan servicing businesses that make, collect, or service high interest loans to citizens of Alabama and the United States. Mr. Soulier is believed to be responsible authorizing, ratifying, or managing LDF BCD's policy of collecting unlawful debt from citizens of Alabama and the United States.

14.    Melissa Doud is a citizen of Wisconsin employed as director of corporate projects for LDF BDC. In that capacity, Ms. Doud is believed to play a role in developing tribal lending products, services, and businesses, including businesses that are making, collecting, or servicing loans to citizens of Alabama and the United States. According to Ms. Doud's biography, she started her employment at LDF BCD at the call center from which LDF BCD makes, collects, and services loans to citizens of Alabama and the United States. Ms. Doud is believed to be responsible authorizing, ratifying, or managing LDF BCD's policy of collecting unlawful debt from citizens of Alabama and the United States.

15.    Jessi Phillips Lorenzo is a citizen of either Florida or Wisconsin who is employed as president of LDF Holdings, LLC ("LDF Holdings"). LDF Holdings, LLC, is believed to be a subsidiary of LDF BDC engaged in the business of internet lending as a servicer of high interest payday and installment loans from lenders owned by LDF Tribe or others, including a lender known as Ishwaawi, LLC, t/a RadiantCash.com that is wholly owned by the LDF Tribe directly or indirectly

through LDF BDC. Ms. Lorenzo is believed to be directly responsible for authorizing, ratifying, or managing LDF BCD's policy of collecting unlawful debt from citizens of Alabama and the United States. As president of LDF Holdings, Jessi Phillips Lorenzo is believed to be directly responsible for managing the collection and servicing of high-interest payday and installment loans from citizens of Alabama and the United States.

16. Juanita Huguley a/k/a Juanita George-Huguley is a citizen of Wisconsin employed as operations director of LDF Holdings, LLC ("LDF Holdings").

## III.   FACTUAL ALLEGATIONS

17. Usurious small loans have been an ongoing financial burden on lower income residents of Alabama and other states for decades. Defendants charge over six hundred percent per annum in many instances, usually on loans of a few hundred dollars with two-week terms. Borrowers could "rollover" their loans an unlimited number of times, and many borrowers who did so found themselves unable to pay the interest back, let alone the principal. The lenders would then attempt to collect by garnishing bank accounts and taking other collection actions.

18.     Similar, and in most cases more consumer-friendly, statutes were passed to regulate high-cost lenders in other states as well. Nevertheless, creative high-cost lenders devised other schemes attempting to circumvent these statutes.

19.     In one scheme—the so-called "rent-a-bank" strategy—payday lenders convinced banks headquartered in states with high (or nonexistent) usury limits to form a lending venture in order to capitalize on the fact that the bank was obligated to comply only with the usury law of its home state, even for loans made elsewhere.

20.     Federal banking regulators eventually shut down these "rent-a-bank" schemes. See Michael A. Stegman, Payday Lending, 21 JOURNAL OF ECONOMIC PERSPECTIVES 169, 178-9 (2007) (describing rent-a-bank scheme and regulatory reaction).

21.     Some payday and high-cost lenders, ever-resourceful, developed a new method to attempt to avoid state usury laws—the "rent-a-tribe" scheme. The lending scheme at issue, in this case, is one such unlawful scheme.

22.     In the rent-a-tribe scheme, the high-cost lender, operating online, associates with a Native American tribe attempting to insulate itself from federal and state law by "renting" the tribe's sovereign legal status and its general immunity from suit under federal and state laws.

9

23.    Like its predecessors, this scheme must fail. As courts and regulators examine the underlying relationship between the high-cost lender and the tribe, they can only conclude that the relationship between the tribe and the monied interests which provide the capital for this scheme is insufficient to permit the lender to avail itself of the tribe's immunity. In virtually every such instance, it is not the tribe operating or even benefiting primarily from the usurious lending — it is the outside entity.

24.    In recent years, these rent-a-tribe schemes have come under increasing scrutiny from regulators. One prominent perpetrator was convicted and sentenced to 16 years in prison related to federal racketeering and truth-in-lending laws.

25.    The Alabama Small Loan Act, Ala. Code § 5-18-1, et. seq. restricts the legal interest rate of loans of less than $1,500 and states in relevant part:

> Maximum rates of interest and charge. Every licensee under this chapter may contract for and receive as interest on any loan of money less than one thousand five hundred dollars ($1,500) an amount at a rate not exceeding three percent a month on that part of the unpaid principal balance not in excess of two hundred dollars ($200), and two percent a month on that part of the unpaid principal balance in excess of two hundred dollars ($200) but less than one thousand five hundred dollars ($1,500).

Ala. Code § 5-18-15.

26.     In addition, every business making such loans in Alabama must be licensed, Ala. Code § 5-18-4(a), and a loan made in violation of the Small Loan Act is void. *Id*., at § 5-18-4(d).

27.     On March 26, 2019, Defendants made a loan (loan no. 659867) to Plaintiff with the principal amount of six hundred dollars and an annual interest rate of 609.72 percent.

28.     On information and belief, none of the defendants are licensed to make loans in Alabama.

## III.   CLASS ALLEGATIONS

29.     Plaintiff asserts her claims individually and on behalf of the proposed Alabama Class defined as follows:

> All Alabama residents from whom Defendants collected or attempted to collect loans and/or who engaged in a loan transaction with Defendants in the four years preceding the filing of this complaint to the date that the class list is created.

30.     Plaintiff asserts her claims on behalf of the proposed RICO Class defined as follows:

> All United States residents from whom Defendants collected or attempted to collect loans and/or who engaged in a loan transaction with Defendants in the four years preceding the filing of this complaint to the date that the class list is created.

31.    Excluded from the each Class are: (1) individuals who already have settled a lawsuit, claim, or obtained a judgment against Defendants arising from the wrongdoing complained of in the Complaint or (4) Defendants, their officers, directors, and employees, or any affiliate of Defendants, members of each of their immediate families and each of their legal representatives, heirs, successors or assigns; (5) any entity in which Defendants have or had a controlling interest; (6) all judicial officers in the United States; (7) the undersigned counsel and the members of their immediate families.

32.    The Alabama Class and the RICO class represented by the Plaintiff are so numerous that joinder of each member of the class and subclass is impracticable.

33.    The claims of the Plaintiff, representative of the Alabama and RICO classes, are typical of the claims of the Alabama and RICO classes. All claims of the Alabama and RICO depend on a showing that the Defendants engaged in a scheme to offer, sell, and collect on small loans sold to residents of Alabama and the United States which violate the usury laws of Alabama and all states in which such loans are offered and which violate relevant provisions of the Racketeer Influenced and Corrupt Organizations Act as set forth in this Complaint. There is no conflict between the individual named Plaintiff and other members of the classes with respect to this action or with respect to the claims for relief set forth in this Complaint.

34.     This action is maintainable as a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure as the facts will show a uniform pattern of conduct by the Defendants that will leave the Court with the task of answering the discreet legal questions as to whether their conduct unlawful and in violation of the Alabama Small Loan Act and the Racketeer Influenced and Corrupt Organizations Act. Given these questions presented to the Court, maintenance of separate actions against the Defendants would create a substantial risk that adjudication of an individual member of the class would be virtually dispositive of the interests of the other members of the class and substantially impede their ability to protect their interests.

35.     This action is maintainable under Rule 23(b)(2) if the Federal Rules of Civil Procedure as the Defendant, through its actions as alleged herein, has acted or refused to act on grounds generally applicable to the class, making declaratory relief appropriate to the class as a whole.

36.     The attorneys for the Plaintiff are experienced and capable in litigation in the field of class actions and in the fields of consumer protection, debt collection, and credit reporting.

37.     The requirements of Rule 23(b)(3) are met by the following issues and facts of the case:

a. There are common questions of law and fact involved with this action that affect the rights of each member of the Classes, and the relief sought is common to the classes, namely:

➢ Whether the Defendants' actions violated the usury laws of Alabama;

➢ Whether the Defendants' actions violated the usury laws of other states;

➢ Whether Defendants are protected by tribal sovereign immunity;

➢ Whether Defendants constitute an "enterprise" under RICO;

➢ Whether Defendants violated RICO by charging interest rates many times the legal limit under state law;

➢ What is the proper measure and amount of damages for the Classes?

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

➢ the Class Members have little interest in or ability to bring separate actions as their individual monetary losses are relatively small;

➢ it is desirable to concentrate all claims relating to the uniform business practice of the Defendants in one judicial forum;

14

➢ there are no foreseeable difficulties likely to be encountered in the management of this class action because the Defendants have records indicating the number and identities of the of Class Members.

c. The Plaintiff will fairly and adequately represent the interests of the Class and Subclasses as the Plaintiffs are members of the class and subclasses, the Plaintiffs' claims are typical of those in the class and subclasses, and there are no conflicts between the claims of the Plaintiffs and the claims of other members of the class and subclasses.

## COUNT ONE

## Violation of the Alabama Small Loan Act

38.     The relevant allegations above are restated in support of Count One.

39.     Loans for amounts less than $1500 (such as the loan to the Plaintiff at issue here) are regulated in Alabama by the Alabama Small Loan Act ("ASLA"). The maximum interest that may be charged on such loans is "a rate not exceeding three percent a month on that part of the unpaid principal balance not in excess of two hundred dollars ($200), and two percent a month on that part of the unpaid principal balance in excess of two hundred dollars ($200) but less than one thousand five hundred dollars ($1,500). Ala. Code (1975) § 5-18-15.

40.    Plaintiff's carries a principal amount of $600, thus falling within the jurisdiction of the ASLA.

41.    Plaintiffs loan has a stated annual interest rate of 609.72%, vastly exceeding the limitation on interest imposed on such loans in Alabama by the Alabama legislature.

42.    The ALSA requires every lender making loans within the ambit of the ALSA to be licensed. Ala. Code (1975) § 5-18-4.

43.    The ALSA requires every lender making loans within the ambit of the ALSA to operate out of a physical location. Ala. Code (1975) § 5-18-5-8.

44.    On Information and belief, Defendants do not have a physical location in Alabama and have never been licensed in Alabama.

45.    The ALSA declares every loan made in violation of the ALSA to be void: "Any contract of loan in the making or collection of which any act shall have been done which violates this section shall be void, and the lender shall have no right to collect, receive or retain any principal, interest or charges whatsoever." Ala. Code § 5-18-4.

Wherefore, Plaintiff prays on behalf of the Alabama Class that this Court hold all loans made to any Alabama resident since the inception of Defendants' unlawful scheme to be void and to order all interest collected on each such loan to be returned

to the borrowers and for an award of attorneys' fees based on the relief provided to the class and/or paid from any common fund created for the benefit of the class.

**COUNT TWO**
**Violation of RICO, 18 U.S.C. §§ 1962 (c)**
**(On Behalf of Plaintiff and the RICO Class)**
**(Class Claims against All Defendants)**

46.     Plaintiff realleges and incorporates by reference the relevant factual allegations set forth in the preceding paragraphs.

47.     Each Defendant is a "person" as that term is defined in 18 U.S.C. § 1964(3).

48.     The Enterprise, consisting of each named Defendant and the unnamed persons or entities who contributed to the actual financing of the Defendants' unlawful scheme, constitute an association-in-fact "enterprise" as that term is defined in 18 U.S.C. § 1961(4), because Defendants associated for the common purpose of profiting off of the collection on unlawful debt by offering and collecting on loans to consumers in Alabama and throughout the United States through the online lender Blue Trust.

49.     The Enterprise had an ongoing organization with an ascertainable structure and functioned as a continuing unit with separate roles and responsibilities.

50.     Defendants violated § 1962(c) of RICO by participating, directly or indirectly, in the conduct of the Enterprise's affairs in the collection of unlawful debt.

51.     RICO defines "unlawful debt" as a debt which was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

52.     All of the loans made to the RICO Class members and collected by Defendants included an interest rate far in excess of twice the enforceable rate in Alabama and in the other states in which Defendants conducted their unlawful scheme.

53.     Plaintiff and the RICO Class members were injured as a result of Defendants' violations of 18 U.S.C. § 1962(c) by, among other things, the payment of unlawful and usurious rates of interest on loans made by the Enterprise.

54.     This conduct began sometime in 2012, continues to date, and will be repeated again and again in the future, to the detriment of consumers in Alabama and other states with similar usury laws.

55.    Accordingly, Defendants are jointly and severally liable to Plaintiffs and the RICO Class for their actual damages, treble damages, costs, and attorneys' fees under 18 U.S.C. § 1964(c).

WHEREFORE, Plaintiff, for herself and on behalf of the Alabama Class and the RICO Class demands judgment as follows:

a. The certification this action as a class action;

b. actual damages;

c. statutory damages;

d. punitive damages

e. statutory attorney's fees;

f. costs provided for by statute and court rule;

g. Declaratory relief;

h. Injunctive relief;

and such other relief the Court deems just, equitable, and proper.

**COUNT THREE**
**Violation of RICO, 18 U.S.C. §§ 1962 (d)**
**(On Behalf of Plaintiff and the RICO Class)**
**(Class Claims against All Defendants)**

56.    Plaintiff realleges and incorporates by reference each and every allegation outlined in the preceding paragraphs.

57.     Each Defendant is a "person" as that term is defined in 18 U.S.C. § 1964(3).

58.     The Enterprise, consisting of each named Defendant and the named and unnamed persons or entities who contributed to the actual financing of the Defendants' unlawful scheme, are in fact an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), associated for the common purpose of profiting off of the collection on unlawful debt by offering and collecting on loans to consumers throughout the United States through the online lender Blue Trust.

59.     The Enterprise has an ongoing organization with an ascertainable structure and functioned as a continuing unit with separate roles and responsibilities.

60.     Defendants violated 18 U.S.C. § 1962(d) by conspiring to use the Enterprise to collect unlawful debt. Each Defendant knowingly agreed to participate in the scheme alleged herein that allowed the Enterprise to make and collect unlawful debt at more than twice the lawful rate of interest under state usury laws.

61.     This conduct began sometime in 2012, continues to date, and will be repeated again and again in the future, to the detriment of consumers in Alabama and all other states with similar usury laws.

62.     For these reasons, Defendants are jointly and severally liable to Plaintiff and the RICO Class for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

WHEREFORE, Plaintiff, for herself and on behalf of the Alabama Class and the RICO Class demands judgment as follows:

a. The certification this action as a class action;

b. actual damages;

c. statutory damages;

d. punitive damages

e. statutory attorney's fees;

f. costs provided for by statute and court rule;

g. Declaratory relief;

h. Injunctive relief;

and such other relief the Court deems just, equitable, and proper.

DATED: October 4, 2019

*/s/ Earl P. Underwood, Jr.*
**EARL P. UNDERWOOD, JR.**
**Underwood & Riemer, P.C.**
**21 S. Section Street**
**Fairhope, AL 36532**
**251.990.5558 Office**
**251.990.0626 Fax**
**Email: epunderwood@alalaw.com**

21

**Attorney for Plaintiff**


**/s/Steven P. Gregory**
**Steven P. Gregory**
**GREGORY LAW FIRM, P.C**
**ASB-0737-R73S**
**2700 Corporate Drive**
**Suite 200**
**Birmingham, Alabama 35242**
**Telephone 205-799-0380**
**email: steve@gregorylawfirm.us**
**Attorney for Plaintiff**


PLAINTIFF REQUESTS TRIAL BY JURY AS TO EACH OF THE CLAIMS
ASSERTED HEREIN.

**/s/ Earl P. Underwood, Jr.**
**EARL P. UNDERWOOD, JR.**

Defendants to be served by certified mail as follows:

Hummingbird Loans d/b/a Blue Trust Loans
3394W Trepania Rd.
Hayward, Wisconsin 54843

Joseph Wildcat, Sr.
418 Little Pines
Lac du Flambeau, Wisconsin 54538

Nicole Chapman-Reynolds
14284 Highway 70 West
Lac Du Flambeau, Wisconsin 54538

Edmund Peterson
3394W Trepania Rd.
Hayward, Wisconsin 54843

22

Chris Soulier
3394W Trepania Rd.
Hayward, Wisconsin 54843

Patricia Marquez
3394W Trepania Rd.
Hayward, Wisconsin 54843

Phillip Chapman, Jr.
3394W Trepania Rd.
Hayward, Wisconsin 54843

Darold Londo
3394W Trepania Rd.
Hayward, Wisconsin 54843

Randy Soulier
3394W Trepania Rd.
Hayward, Wisconsin 54843

Melissa Doud
3394W Trepania Rd.
Hayward, Wisconsin 54843

Jessi Phillips Lorenzo
3394W Trepania Rd.
Hayward, Wisconsin 54843

Juanita Huguley a/k/a Juanita George-Huguley
3394W Trepania Rd.
Hayward, Wisconsin 54843